POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE KL KAMHOLZ JOINT REVOCABLE TRUST, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> B. RILEY FINANCIAL, INC., BRYANT RILEY, TOM KELLEHER, and PHILLIP J. AHN, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff The KL Kamholz Joint Revocable Trust ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, the investigation conducted by Plaintiff's counsel, which includes without limitation: (a) review and analysis of regulatory filings made by B. Riley Financial, Inc. ("B. Riley" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by B. Riley; and (c) review of other publicly available information concerning B. Riley.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of persons and entities that purchased or otherwise acquired B. Riley securities between February 28, 2022 and November 9, 2023, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     B. Riley is a financial services platform.   The Company, through its subsidiaries, provides services including investment banking, brokerage, wealth management, asset management, direct lending, business advisory, valuation, and asset disposition.  B. Riley's clients include public and private companies, financial sponsors, investors, financial institutions, and individuals.

1

3.      Brian Kahn ("Kahn") is a client of B. Riley.  Kahn is the Chief Executive Officer ("CEO") of Franchise Group, Inc. f/k/a Liberty Tax ("FRG"), which B. Riley has had dealings with since at least 2018.  B. Riley has provided significant funds to FRG and/or one or more of its subsidies, and/or other entities controlled by Kahn, since at least December 2021.   FRG is a holding company which acquires and manages companies, primarily franchises.   FRG's businesses include Vitamin Shoppe, Pet Supplies Plus, and Buddy's Newco LLC (d/b/a Buddy's Home Furnishings) ("Buddy's"), among others.

4.      In May 2023, B. Riley entered into an agreement to assist Kahn in leading a management buyout of FRG.  The $2.8 billion deal to take FRG private was completed on August 21, 2023.  The transaction was partially financed by Nomura Holdings Inc. ("Nomura") via B. Riley, who secured the financing allowing Kahn and other senior management of FRG to acquire the remaining 64% stake that they did not already own.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors that: (i) Defendants knew or were reckless in not knowing that Kahn and/or one or more of his controlled entities were engaged in illicit business activities; (ii) Kahn had been credibly implicated in a conspiracy to defraud investors of millions of dollars; (iii) in spite of all the foregoing, B. Riley continued to finance the

transaction enabling Kahn and others to take FRG private through complex arrangements; (iv) the foregoing was reasonably likely to draw regulatory scrutiny to B. Riley; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.     On November 2, 2023, Kahn was implicated as the unnamed co-conspirator in a conspiracy to defraud investors of $294 million in funds.  Specifically, the U.S. Department of Justice ("DOJ") announced that Prophecy Asset Management ("Prophecy") president John Hughes ("Hughes") had pled guilty to the charge with two unnamed co-defendants.  The same day, the SEC filed a civil complaint against Hughes in connection with these allegations, styled *Securities and Exchange Commission v. John Hughes*, No. 3:23-cv-21816 (D.N.J. filed November 2, 2023) (the "SEC Complaint"). The SEC Complaint, *inter alia*, implicated, among others, both Kahn and Buddy's in the alleged conspiracy to defraud, illicit business activities.  *Bloomberg* reported on that same day that Kahn had been identified by "a person familiar with the matter" as one of two co-conspirators.

7.     On November 3, 2023, after the market closed, The Friendly Bear posted on the social media platform X (formerly known as Twitter), doubting whether B. Riley knew of Kahn's involvement and disclosed the same to Nomura.  The Friendly Bear also

commented that the DOJ's "charging document clearly implicates him [*i.e.*, Kahn] in Hughes' crime. There is a high chance of indictment here."

8.     On this news, B. Riley's stock price fell $9.02, or 22%, to close at $32.54 per share on the next trading day, November 6, 2023, on unusually heavy trading volume; and the price of B. Riley's 6.00% Senior Notes due 2028 ("6% Senior Notes") fell $1.77, or 9.01%, to close at $17.87 per 6% Senior Note on the next trading day, November 6, 2023.

9.     Then, on November 9, 2023, after the market closed, the Company revealed significant details concerning the FRG transaction and the years-long series of complex financial transactions between B. Riley, Kahn, and the Company's respective subsidiaries, which culminated in the August 21, 2023 transaction.   Analyzing these complex transactions, The Friendly Bear reported that "B Riley ended up funding 281MM of what was around a 560MM equity check. That's over 50% ownership. Yet they claim to have only 31% voting rights. ***It looks like B Riley engaged in some funny business to avoid consolidation and placed control of FRG in the hands of the star of 'Prophecy'*** - Brian Kahn."

10.     On this news, B. Riley's stock price fell $4.47, or 15%, to close at $25.60 per share on November 10, 2023, on unusually heavy trading volume; and B. Riley's 6% Senior Note price fell $1.01, or 5.34%, to close at $17.92 per 6% Senior Note on November 10, 2023.   B. Riley's stock price continued to fall $3.59, or 14%, over the

next consecutive trading session to close at $22.01 per share on November 13, 2023, on unusually heavy trading volume; and B. Riley's 6% Senior Note price fell $3.06, or 17.08%, over the next consecutive trading session to close at $14.86 per 6% Senior Note on November 13, 2023, on unusually heavy trading volume.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this Judicial District.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

16.     Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased B. Riley securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant B. Riley is incorporated under the laws of Delaware with its principal executive offices located in Los Angeles, California.  B. Riley's common stock and 6% Senior Notes trade in an efficient market on the NASDAQ exchange ("NASDAQ") under the ticker symbols "RILY" and "RILYT", respectively.

18.     Defendant Bryant Riley ("Bryant Riley") was the Company's Co-Founder, Chairman, & Co-CEO at all relevant times.

19.     Defendant Tom Kelleher ("Kelleher") was the Company's Co-Founder and Co-CEO at all relevant times.

20.     Defendant Phillip J. Ahn ("Ahn") was the Company's Chief Financial Officer and Chief Operating Officer at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

21.    Defendants Bryant Riley, Kelleher, and Ahn (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

22.    B. Riley and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

23.    B. Riley is a financial services platform.  The Company, through its subsidiaries, provides services including investment banking, brokerage, wealth management, asset management, direct lending, business advisory, valuation, and asset

7

disposition.  B. Riley's clients include public and private companies, financial sponsors, investors, financial institutions, and individuals.

24.    Kahn is a client of B. Riley and the CEO of FRG, which B. Riley has had dealings with since at least 2018.  B. Riley has provided significant funds to FRG and/or one or more of its subsidies, and/or other entities controlled by Kahn, since at least December 2021.  FRG is a holding company which acquires and manages companies, primarily franchises.  FRG's businesses include Vitamin Shoppe, Pet Supplies Plus, and Buddy's, among others.

## **Materially False and Misleading Statements Issued During the Class Period**

25.    The Class Period begins on February 28, 2022, when B. Riley filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2021 (the "2021 10-K"). That filing stated, in relevant part[1]:

*Badcock Loan Receivable*

On December 20, 2021, the Company entered into a Master Receivables Purchase Agreement ("Receivables Purchase Agreement" [*sic*] with W.S. Badcock Corporation, a Florida corporation ("WSBC"), ***an indirect wholly owned subsidiary of [FRG]. The Company paid $400,000 in cash to WSBC for the purchase of certain consumer credit receivables of WSBC.*** The Company recognized the $400,000 as part of its loans receivable, at fair value on the consolidated balance sheets, which is collateralized by the performance of the consumer credit receivables of WSBC. In connection with the Receivables Purchase Agreement, the Company entered into a

---

[1] Unless otherwise stated, all emphases in bold and italics hereinafter is added, and all footnotes are omitted.

Servicing Agreement (the "Servicing Agreement") with WSBC pursuant to which WSBC will provide to the Company certain customary servicing and account management services in respect of the receivables purchased by the Company under the Receivables Purchase Agreement. In addition, subject to certain terms and conditions, ***FRG has agreed to guarantee the performance by WSBC of its obligations under the Receivables Purchase Agreement and the Servicing Agreement***.

26.     Appended as exhibits to the 2021 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the 2021 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by th[e]" 2021 10-K, and that "the financial statements, and other financial information included in th[e 2021 10-K], fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in th[e]" 2021 10-K.

27.     On March 16, 2023, B. Riley filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2022 (the "2022 10-K").  That filing stated, in relevant part:

*Badcock Loan Receivable*

On December 20, 2021, the Company entered into a Master Receivables Purchase Agreement with W.S. Badcock Corporation, a Florida corporation ("WSBC"), ***an indirect wholly owned subsidiary of [FRG]. The Company paid $400,000 in cash to WSBC for the purchase of certain consumer credit receivables of WSBC.*** The accounting for this transaction resulted in the Company recording a $400,000 loan receivable from WSBC with the

9

recognition of interest income at an imputed rate based on the cash flows expected to be received from the collection of the consumer receivables that serve as collateral for the loan. The loan receivable was measured at fair value on the consolidated balance sheets.

***On September 23, 2022, the Company's subsidiary, B Riley Receivables II, LLC, a Delaware limited liability company, entered into a Master Receivables Purchase Agreement ("2022 Badcock Receivable") with WSBC. This purchase of $168,363 consumer credit receivables of WSBC was partially financed by a $148,200 term loan*** discussed in Note 13. The accounting for this transaction resulted in the Company recording a $168,363 loan receivable from WSBC with the recognition of interest income at an imputed rate based on the cash flows expected to be received from the collection of the consumer receivables that serve as collateral for the loan. The loan receivable was measured at fair value on the consolidated balance sheets.

In connection with these loans, the Company entered into a Servicing Agreement with WSBC pursuant to which WSBC will provide to the Company certain customary servicing and account management services in respect of the receivables purchased by the Company under the Receivables Purchase Agreement. In addition, subject to certain terms and conditions, ***FRG has agreed to guarantee the performance by WSBC of its obligations under the Master Receivables Purchase Agreements and the Servicing Agreement***.

As of December 31, 2022 and 2021, loans receivable to WSBC in the Company's consolidated balance sheets included loans measured at fair value in the amount of $318,109 and $400,000, respectively.

28.    Appended as exhibits to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by the Individual Defendants.

29.    On May 10, 2023, B. Riley announced in a press release that it had entered into a merger agreement regarding FRG, stating, in relevant part:

[FRG] today announced that it has entered into a definitive agreement and plan of merger (the "Merger Agreement") ***pursuant to which members of***

*the senior management team of [FRG] led by Brian Kahn, the Company's [CEO], (collectively with affiliates and related parties of the senior management team,* the "Management Group"), *in financial partnership with a consortium that includes B. Riley . . . and Irradiant Partners,* will acquire the approximately 64% of the Company's issued and outstanding common stock that the Management Group does not presently own or control. The transaction has an enterprise value of approximately $2.6 billion, including the Company's net debt and outstanding preferred stock.

\* \* \*

Brian Kahn, CEO of [FRG] stated, "We are excited to have this opportunity to continue our business strategy of partnering with high quality franchisees, operators and financial institutions, while also delivering certain value to our public stockholders despite a challenging business environment."

30.     The same day, B. Riley filed a Form 8-K, which reported, in relevant part:

On May 10, 2023, *B. Riley . . . entered into certain agreements pursuant to which B. Riley has, among other things, agreed to provide certain equity funding and other support in connection with the acquisition (the "Acquisition") by Freedom VCM, Inc., a Delaware corporation (the "Parent"), of [FRG]).* Parent has agreed to acquire FRG pursuant to an Agreement and Plan of Merger, dated as of May 10, 2023, by and among the Parent, Freedom VCM Subco, Inc., a Delaware corporation and a wholly-owned subsidiary of the Parent (the "Merger Sub"), and FRG (the "Merger Agreement"), pursuant to which, upon the terms and subject to the conditions set forth therein, at the closing, Merger Sub will merge with and into FRG, with FRG surviving the merger as a wholly owned subsidiary of Parent. The buyer group includes members of the senior management team of FRG, led by Brian Kahn*, FRG's [CEO], in financial partnership with a consortium that includes B. Riley. B. Riley is not a party to the Merger Agreement. Pursuant to a commitment letter, B. Riley has agreed to fund upon the closing of the merger up to $560 million in equity financing, though expects the actual amount to be funded to be substantially less.* A copy of the press release issued by FRG is furnished as Exhibit 99.1 to this Current Report on Form 8-K.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

31.     On May 11, 2023, B. Riley announced its entry into an Equity Commitment Letter and Limited Guarantee, in a press release that stated, in relevant part:

> The buyer group includes members of the senior management team of FRG, led by Brian Kahn, FRG's [CEO], in financial partnership with a consortium that includes B. Riley. B. Riley is not a party to the Merger Agreement.
>
> * * *
>
> B. Riley entered into the Equity Commitment Letter and the Limited Guarantee, each as defined below in connection with the Acuisition[ *sic*].
>
> *Equity Commitment Letter*
>
> B. Riley entered into an Equity Commitment Letter, dated as of May 10, 2023 (the "Equity Commitment Letter"), with Freedom VCM Holdings, LLC ("TopCo") and Parent, pursuant to which ***B. Riley, subject to the terms and conditions of the Equity Commitment Letter, has agreed to contribute to TopCo, at or prior to the closing of the Merger, an amount equal to $560 million in equity financing (the "B. Riley Equity Commitment"). The B. Riley Equity Commitment will then be used by TopCo to fund part of the Acquisition. FRG is a third party beneficiary of the Equity Commitment Letter***, and FRG is entitled to specifically enforce the Equity Commitment Letter; provided, however, that B. Riley's obligations under the Equity Commitment Letter will terminate in the event that any claim is brought by FRG with respect to the Limited Guarantee, as defined below. Subject to certain conditions set forth in the Equity Commitment Letter, B. Riley has the right to assign all or a portion of such commitments to its affiliates, financing sources or other investors, and ***B. Riley expects the actual amount to be funded by it at Closing to be substantially less than the $560 million.***
>
> *Limited Guarantee*
>
> B. Riley and FRG entered into a Limited Guarantee dated as of May 10, 2023 (the "Limited Guarantee") in favor of FRG, pursuant to which ***B. Riley agreed to guarantee to FRG the due and punctual payment, performance and discharge when required by Parent or Merger Sub to FRG of certain liabilities and obligations of Parent or Merger Sub under the Merger***

*Agreement pursuant to and in accordance therewith*, including (i) a termination fee due to FRG in the amount of $55,000,000 if the Merger Agreement is terminated under certain specified circumstances provided for in the Merger Agreement; (*ii) certain reimbursement obligations of Parent when required to be paid by Parent pursuant to the Merger Agreement; and (iii) liabilities or damages resulting from any actual fraud or Willful and Material Breach (as defined in the Merger Agreement) by Parent or Merger Sub required to be paid by Parent or Merger Sub pursuant to the Merger Agreement; provided, that, except in the case of actual fraud or Willful and Material Breach by Parent or Merger Sub, the aggregate liability of B. Riley under the Limited Guarantee will not exceed $57,000,000.* B. Riley also waived certain defenses arising out of certain events set forth in the Limited Guarantee.

32.    On July 27, 2023, B. Riley filed with the SEC a Form 424B5 Prospectus supplement which contained the following description of the proposed FRG transaction:

*Proposed FRG Transaction*

On May 10, 2023, [FRG] announced that it had entered into a definitive merger agreement pursuant to which members of the senior management team of FRG and related entities would acquire the approximately 64% of FRG's common stock not owned by them. *At the same time, the Company entered into an equity commitment letter with the acquisition vehicle formed by FRG senior management pursuant to which, among other things, the Company agreed to provide certain equity funding and other support in connection with the transaction.* Specifically, the equity commitment letter provides, subject to its terms and conditions, that *the Company will contribute an amount equal to up to $560 million in equity financing for the transaction (the Company currently expects to invest approximately $250 million pursuant to the equity commitment, with the remainder to be funded by co-investments)*. FRG has scheduled a special meeting of stockholders for August 17, 2023 to vote on the transaction and related matters. The proposed transaction is anticipated to close in the second half of 2023, subject to satisfaction or waiver of the closing conditions contained in the definitive documentation.

*Credit Facility*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The Company is in discussions with certain of its lenders in respect of a new secured credit facility that, if fully drawn, would increase the Company's aggregate consolidated indebtedness by up to *an additional $300 million, a portion of the proceeds of which would be used to finance the Company's equity investment in FRG. If entered into, the new secured credit facility is expected to be secured by a first priority lien on, among others, all assets secured by the Company's existing secured credit facility.*

33.     On August 9, 2023, B. Riley filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2023 (the "2Q23 10-Q"), which stated, in relevant part:

*Badcock Loan Receivable*

On December 20, 2021, the Company entered into a Master Receivables Purchase Agreement with W.S. Badcock Corporation, a Florida corporation ("WSBC"), *an indirect wholly owned subsidiary of [FRG]. The Company paid $400,000 in cash to WSBC for the purchase of certain consumer credit receivables of WSBC. On September 23, 2022, the Company's subsidiary, B Riley Receivables II, LLC ("BRRII"), a Delaware limited liability company, entered into a Master Receivables Purchase Agreement ("2022 Badcock Receivable") with WSBC. This purchase of $168,363 consumer credit receivables of WSBC was partially financed by a $148,200 term loan* discussed in Note 11. *During the six months ended June 30, 2023, BRRII entered into Amendment Nos. 2 and No. 3 to the 2022 Badcock Receivable with WSBC for a total of $145,278 in additional consumer credit receivables.* The accounting for these transactions resulted in the Company recording a loan receivable from WSBC with the recognition of interest income at an imputed rate based on the cash flows expected to be received from the collection of the consumer receivables that serve as collateral for the loan. The loan receivable was measured at fair value on the condensed consolidated balance sheets.

In connection with these loans, the Company entered into a Servicing Agreement with WSBC pursuant to which WSBC provides to the Company certain customary servicing and account management services in respect of the receivables purchased by the Company under the Receivables Purchase Agreement. In addition, subject to certain terms and conditions, *FRG has*

14

***agreed to guarantee the performance by WSBC of its obligations under the Master Receivables Purchase Agreements and the Servicing Agreement***.

\* \* \*

*FRG Commitments and Guarantees*

**On May 10, 2023, we entered into certain agreements pursuant to which we have, among other things, agreed to provide certain equity funding and other support in connection with the acquisition** (the "Acquisition") by Freedom VCM, Inc., a Delaware corporation ("Parent"), of [FRG]. Parent has agreed to acquire FRG pursuant to an Agreement and Plan of Merger, dated as of May 10, 2023, by and among Parent, Freedom VCM Subco, Inc., a Delaware corporation and a wholly-owned subsidiary of Parent (the "Merger Sub"), and FRG (the "Merger Agreement"), pursuant to which, upon the terms and subject to the conditions set forth therein, at the closing, Merger Sub will merge with and into FRG, with FRG surviving the merger as a wholly owned subsidiary of Parent. **The buyer group includes members of the senior management team of FRG, led by FRG's [CEO]. We are not a party to the Merger Agreement.**

\* \* \*

*Equity Commitment Letter*

We entered into an Equity Commitment Letter, dated as of May 10, 2023 (the "Equity Commitment Letter"), with Freedom VCM Holdings, LLC ("TopCo") and Parent, pursuant to which we, subject to the terms and conditions of the Equity Commitment Letter***, have agreed to contribute to TopCo, at or prior to the closing of the Merger, an amount equal to up to $560.0 million in equity financing (the "B. Riley Equity Commitment"). The B. Riley Equity Commitment will then be used by TopCo to fund part of the Acquisition. FRG is a third party beneficiary of the Equity Commitment Letter***, and FRG is entitled to specifically enforce the Equity Commitment Letter; provided, however, that our obligations under the Equity Commitment Letter will terminate in the event that any claim is brought by FRG with respect to the Limited Guarantee, as defined below. Subject to certain conditions set forth in the Equity Commitment Letter, we have the right to assign all or a portion of such commitments to its affiliates,

financing sources or other investors, and we expect the actual amount to be funded by it at Closing to be less than the $560.0 million.

*Limited Guarantee*

We entered into a Limited Guarantee with FRG dated as of May 10, 2023 (the "Limited Guarantee") in favor of FRG, pursuant to which we agreed to guarantee to FRG the due and punctual payment, performance and discharge when required by Parent or Merger Sub to FRG of certain liabilities and obligations of Parent or Merger Sub under the Merger Agreement pursuant to and in accordance therewith, including (i) a termination fee due to FRG in the amount of $55.0 million if the Merger Agreement is terminated under certain specified circumstances provided for in the Merger Agreement; (ii) certain reimbursement obligations of Parent when required to be paid by Parent pursuant to the Merger Agreement; and (iii) ***liabilities or damages resulting from any actual fraud or Willful and Material Breach (as defined in the Merger Agreement) by Parent or Merger Sub required to be paid by Parent or Merger Sub pursuant to the Merger Agreement;*** provided, that, except in the case of actual fraud or Willful and Material Breach by Parent or Merger Sub, our aggregate liability under the Limited Guarantee will not exceed $57.0 million. We also waived certain defenses arising out of certain events set forth in the Limited Guarantee.

34.     Appended as exhibits to the 2Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by the Individual Defendants.

35.     On August 25, 2023, B. Riley filed with the SEC the "Credit Agreement, dated August 21, 2023, among B. Riley Financial, Inc., BR Financial Holdings, LLC, each of the lenders from time to time parties thereto, Nomura Corporate Funding Americas, LLC, and Computershare Trust Company, N.A.," as Exhibit 10.1 to a Form 8-K.  In the Company's 8-K filing, the Company announced the completion of equity financing in connection with the acquisition of FRG and stated:

On August 21, 2023, B. Riley . . . completed a previously announced equity financing (the "Equity Investment") in connection with the acquisition (the "Acquisition") of [FRG], *by a buyer group that included members of senior management of FRG, led by Brian Kahn, FRG's [CEO], in a financial partnership with a consortium that includes certain of Brian Kahn's affiliate entities*, the Company and certain other investors. The Acquisition was completed pursuant to the terms of that certain Agreement and Plan of Merger, dated as of May 10, 2023 (the "Merger Agreement"), by and among FRG, Freedom VCM, Inc., a Delaware corporation ("Parent") and Freedom VCM Subco, Inc., a Delaware corporation and wholly owned subsidiary of Parent ("Merger Sub"). Pursuant to the Merger Agreement, Merger Sub merged with and into FRG (the "Merger"), with FRG surviving the Merger as a subsidiary of Parent. The Company was not a party to the Merger Agreement. In connection with the Acquisition, a subsidiary of the Company made a new cash Equity Investment of *$216.5 million in FRG's new parent entity, bringing the Company's entire equity investment in the parent entity to approximately $280 million.*

36.     On August 28, 2023, B. Riley issued a press release entitled "B. Riley Leads Financing for Management Buyout of Franchise Group" which stated, in relevant part, that the Company:

led the equity financing to facilitate the $2.8 billion management-led acquisition of [FRG] which was completed on August 21, 2023.

*B. Riley invested $216.5 million of new capital in the transaction. Other institutional, financial and strategic investors invested approximately $280 million of additional equity capital in the new FRG alongside significant rollover equity contributions from FRG management.* As result of the completed transaction, the management-led consortium has acquired all the outstanding and issued common and preferred stock of FRG.

37.     The above statements identified in ¶¶ 25-36 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:

(i) Defendants knew or were reckless in not knowing that Kahn and/or one or more of his controlled entities were engaged in illicit business activities; (ii) Kahn had been credibly implicated in a conspiracy to defraud investors of millions of dollars; (iii) in spite of all the foregoing, B. Riley continued to finance the transaction enabling Kahn and others to take FRG private through complex arrangements; (iv) the foregoing was reasonably likely to draw regulatory scrutiny to B. Riley; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### The Truth Begins to Emerge

38.     On November 2, 2023, the DOJ announced Hughes pled guilty to conspiring to defraud investors out of $294 million in connection Prophecy (the "DOJ Charging Papers").  The DOJ Charging Papers stated, in relevant part:

> From in or around January 2015 to in or around March 2020, ***defendant John Hughes ("HUGHES") conspired with Co-conspirator-1 and Co-conspirator-2 to defraud dozens of investors ("Victims")*** who had invested approximately $360 million in investment funds managed by Prophecy Asset Management LP ("Prophecy"), through lies, deception, misleading statements, and material omissions relating to, among other things: (a) the purported low-risk, transparent, and diversified nature of Prophecy's funds; (b) the manner and purpose in which HUGHES, Coconspirator-1, and Co-conspirator-2 used money from those funds; and, (c) the financial position of Prophecy's funds leading up to its collapse in or around March 2020.

39.     The DOJ Charging Papers described the fraud perpetrated in conjunction with "Co-conspirator-2" who was as "an investment manager (called a 'sub- advisor') for Prophecy."  Specifically, it stated that "[s]ince in or around 2019, Co-conspirator-2

*was also the CEO and President of a multi-billion dollar company that owned and managed large and diversified retail franchises*."

40.     On the same day, the SEC filed a civil complaint against Hughes in connection with these allegations, styled *Securities and Exchange Commission v. John Hughes*, No. 3:23-cv-21816 (D.N.J. filed November 2, 2023).   The SEC Complaint alleged that Hughes, in conjunction with "Individual 2," committed fraud, including that "Individual 2" was at the heart of the admitted fraud.  Specifically, the SEC Complaint stated, in relevant part:

> Hughes, Individuals 1 and 2, and PAM [*i.e.*, Prophecy Asset Management LP] deceived Prophecy's administrator and auditor by entering into sham transactions to provide Individual 2 with cash to cover his trading losses and falsifying documentation designed to create the appearance that Individual 2's trading losses remained secured by non-cash collateral[.]
>
> * * *
>
> To purportedly secure the receivable with collateral, Prophecy and Individual 2 entered into at least six agreements consisting of, among other things, personal guaranties, promissory notes, and other pledged "assets," which did not exist or had questionable value.

41.     The SEC Complaint detailed numerous sham transactions entered into by "Individual 2" including:

> *Hughes and Individual 2 fabricated certain documents* concerning a purported agreement between Prophecy and *[Buddy's], a company controlled by Individual 2.* Specifically, Individual 2 created an agreement titled, "*Buddy's Newco LLC Series A Preferred Stock Agreement*" *("Buddy's Preferred Stock Agreement").* On April 10, 2019, Individual 2 emailed Hughes a draft of the Buddy's Preferred Stock Agreement that purported to show Prophecy's ownership of $125 million worth of preferred

shares of Buddy's stock, *backdated* to January 1, 2018. By June 3, 2019, Individual 2 delivered to Hughes two Buddy's Convertible Stock Certificates ("Buddy's Certificates") *backdated* to January 3, 2018*. One of the certificates was for 75 shares with a purported valuation of $75 million. The second certificate was for 150 shares with a purported valuation of $150 million.* Subsequently, Hughes provided Prophecy's auditor with the Buddy's Preferred Stock Agreement and the Buddy's Certificate purportedly valued at $75 million. In response to a series of questions from Prophecy's auditor to Individual 2, which he forwarded to Hughes, Individual 2 falsely confirmed that Individual 2 had authority to issue the preferred stock to Prophecy and that the preferred stock was collateral used to secure Individual 2's 2018 trading losses, was issued and outstanding as of December 31, 2018, and was issued in Prophecy's name. In reality, *Buddy's Newco LLC Series A Preferred Shares were never issued to Prophecy or anybody else because the shares never existed. The entire agreement and transaction was a sham created by Hughes and Individual 2.*

42.    The SEC Complaint further set out:

Although Individual 2 had a cash collateral deficit in excess of $50 million during the fall of 2018, *Prophecy provided a $36 million unsecured loan to Vintage Capital Management LLC ("Vintage"), an asset management company controlled by Individual 2*.

*<u>Hughes and Individual 1 understood that Individual 2 was going to use the loan proceeds to provide rescue financing to a company in which Vintage was heavily invested</u>.*

Hughes and Individual 2 again entered into a series of complex sham transactions to conceal the failed loan. This time, Prophecy "invested" $36 million into two other entities controlled by Individual 2, which then routed the money to Vintage so it could repay the loan owed to Prophecy.

43.    On the same day, after the market closed, *Bloomberg* reported that Kahn had been identified as one of two co-conspirators by "a person familiar with the matter."

20

44.     Then, on November 3, 2023, after the market closed, The Friendly Bear posted on Twitter an excerpt of the *Bloomberg* report and questioned:

Did Kahn disclose this to B Riley? Hard to believe that this was withheld or unknown. ***The parallel civil litigation[²] was known and available for years. Did B Riley disclose it to Nomura when they upsized the facility to buy $FRG***?

45.     The Friendly Bear also commented on the DOJ Charging Papers and stated: "***Brian Kahn is co-conspirator 2 here. This charging document clearly implicates him in Hughes' crime.*** There is a high chance of indictment here. ***$FRG is extremely overlevered, a 'bet on Kahn', and could lose access to critical funding upon indictment.***"

46.     On this news, B. Riley's stock price fell $9.02, or 22%, to close at $32.54 per share on the next trading day, November 6, 2023, on unusually heavy trading volume; and B. Riley's 6% Senior Note price fell $1.77, or 9.01%, to close at $17.87 per 6% Senior Note on the next trading day, November 6, 2023.

47.     In the following days, Defendants offered unmitigated support for Kahn. During an earnings call on November 8, 2023, Defendant Bryant Riley stated: "I know that today, a statement came out from Brian [Kahn] denying any involvement and what happened with Prophecy, and that's good enough for me." He continued that "our confidence in these businesses [FRG] has not waned at all . . . . As CEO, Brian Kahn

was the architect to help put these businesses together to form FRG as it is known today. I've known Brian for many years and have had no direct experience with what has been alleged."

48.     The above statements identified in ¶ 47, *supra*, were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) Defendants knew or were reckless in not knowing that Kahn and/or one or more of his controlled entities were engaged in illicit business activities; (ii) B. Riley was reasonably likely to draw regulatory scrutiny for its relationship with Kahn and the complex transactions and disclosures that enabled Kahn and others to take FRG private; and (iii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis..

## **The Truth Fully Emerges**

49.     On November 9, 2023, after the market closed, B. Riley filed its quarterly report on Form 10-Q for the period ended September 30, 2023 (the "3Q23 10-Q"), revealing significant details concerning the FRG transaction and the years-long series of complex financial transactions between B. Riley, Kahn, and their companies' respective

---

[2] The "civil litigation" is a 2020 lawsuit filed by a group of Prophecy investors alleging that Kahn (with the other named defendants) fraudulently extracted tens of millions of dollars and used more than $100 million to amass a controlling stake for himself in FRG.

subsidiaries, culminating in the August 21, 2023 transaction.   The 3Q23 10-Q detailed the manner in which B. Riley and FRG executed a series of complex financial transaction to effectuate the August 21, 2023 deal:

       a.      B. Riley, via wholly owned subsidiary BR Financial Holdings, LLC, entered into a credit agreement with Nomura Corporate Funding Americans, LLC.

       b.      B. Riley used those funds to fund an equity investment in Freedom VCM Holdings LLC, an indirect parent entity for FRG, in exchange for $281.1 million. In return, B. Riley assumed a 31% voting interest in Freedom VCM Holdings LLC.

       c.      The same day, B. Riley, FRG, and their subsidiaries entered into a series of related party transactions.  One of B. Riley's subsidiaries, B. Riley Receivables II, LLC, had previously entered into a series of loan receivable transactions between 2021 and 2022 with W.S. Badcock, an indirect subsidiary of FRG, amounting to $33.60 million.  In connection with the August 21, 2023 deal, B. Riley also sold its entire equity interest in B Riley Receivables II, LLC to Freedom VCM Receivables, Inc. for $58.9 million.  In exchange, Freedom VCM Receivables then assumed a significant obligation and entered into a note receivable with B. Riley Receivables II, LLC for $58.87 million and one of FRG's subsidiaries became a related party loan receivable with a fair value of $33.60 million.

50.    In a series of posts on social media platform X that day, The Friendly Bear analyzed this disclosure and stated:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In original $FRG deal, $RILY estimated the equity account at around 560MM in total (with 1.035B total market cap acquired and 475mm of that funded by Irradiant). ***B Riley ended up funding 281MM of what was around a 560MM equity check. That's over 50% ownership. Yet they claim to have only 31% voting rights. It looks like B Riley engaged in some funny business to avoid consolidation and placed control of FRG in the hands of the star of "Prophecy"*** - Brian Kahn.

51.     On this news, B. Riley's stock price fell $4.47, or 15%, to close at $25.60 per share on November 10, 2023, on unusually heavy trading volume; and B. Riley's 6% Senior Note price fell $1.01, or 5.34%, to close at $17.92 per 6% Senior Note on November 10, 2023.  The Company's stock price continued to fall $3.59, or 14%, over the next consecutive trading session to close at $22.01 per share on November 13, 2023, on unusually heavy trading volume; and B. Riley's 6% Senior Note price fell $3.06, or 17.08%, over the next consecutive trading session to close at $14.86 per 6% Senior Note on November 13, 2023, on unusually heavy trading volume.

52.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired B. Riley securities during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the

officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, B. Riley's common stock and 6% Senior Notes actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of B. Riley's securities were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by B. Riley or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of B. Riley; and

c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

59.     The market for B. Riley's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, B. Riley's securities traded at artificially inflated prices

during the Class Period.   Plaintiff and other members of the Class purchased or otherwise acquired B. Riley's securities relying upon the integrity of the market price of the Company's securities and market information relating to B. Riley, and have been damaged thereby.

60.   During the Class Period, Defendants materially misled the investing public, thereby inflating the price of B. Riley's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.   The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about B. Riley's business, operations, and prospects as alleged herein.

61.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about B. Riley's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false

and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

62.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

63.     During the Class Period, Plaintiff and the Class purchased B. Riley's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

64.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding B. Riley, their control over, and/or receipt

and/or modification of B. Riley's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning B. Riley, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

65.     The market for B. Riley's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, B. Riley's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of B. Riley's securities and market information relating to B. Riley, and have been damaged thereby.

66.     During the Class Period, the artificial inflation of B. Riley's securities was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about B. Riley's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of B. Riley and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at

all relevant times, and when disclosed, negatively affected the value of the Company's securities.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

67.    At all relevant times, the market for B. Riley's securities was an efficient market for the following reasons, among others:

a.    B. Riley's securities, including its common stock and 6% Senior Notes, met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.    As a regulated issuer, B. Riley filed periodic public reports with the SEC and/or the NASDAQ;

c.    B. Riley regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d.    B. Riley was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the

sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

68.    As a result of the foregoing, the market for B. Riley's securities promptly digested current information regarding B. Riley from all publicly available sources and reflected such information in the prices of B. Riley's securities, including its common stock and 6% Senior Notes.  Under these circumstances, all purchasers of B. Riley's securities during the Class Period suffered similar injury through their purchases of B. Riley's securities at artificially inflated prices and a presumption of reliance applies.

69.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NO SAFE HARBOR

70.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of B. Riley who knew that the statement was false when made.

## COUNT I

## (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

71.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

72.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase B. Riley's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each defendant, took the actions set forth herein.

73.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for B. Riley's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

74.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce, and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about B. Riley's financial well-being and prospects, as specified herein.

75.     Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices,

and a course of conduct as alleged herein in an effort to assure investors of B. Riley's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about B. Riley and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

76.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of

the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

77.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing B. Riley's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

78.    As a result of the dissemination of the materially false and/or misleading information, and/or failure to disclose material facts, as set forth above, the market price of B. Riley's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of

material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired B. Riley's securities during the Class Period at artificially high prices and were damaged thereby.

79.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that B. Riley was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their B. Riley securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

80.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.     The Individual Defendants acted as controlling persons of B. Riley within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

85.    As set forth above, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint.   By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated: March 15, 2024                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

WOHL & FRUCHTER LLP
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS